Fernando GOMES, Plaintiff–Appellant,

v.

AVCO CORPORATION and Local 1010,
United Automobile, Aerospace & Agri-
cultural Implement Workers of Amer-
ica, AFL–CIO, Defendants–Appellees.

No. 1398, Docket 91–9319.

United States Court of Appeals,
Second Circuit.

Argued April 24, 1992.

Decided June 1, 1992.

Donald L. Sapir, White Plains, N.Y. for plaintiff-appellant.

Eugene A. Boyle (Bryan Steinbach, Banta, Cox & Hennessy, Chicago, Ill., of counsel) for defendant-appellee Avco.

Daniel E. Livingston (Susan Price–Livingston, Gould, Livingston, Adler & Pulda, Hartford, Conn., of counsel) for defendant-appellee Local 1010.

Before: OAKES, Chief Judge, KEARSE and WALKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff Fernando Gomes appeals from a decision of the District Court for the District of Connecticut granting summary judgment to defendants Avco Corporation (Avco) and Local 1010, United Automobiles, Aerospace and Agricultural Implement Workers of America, AFL–CIO (Local 1010). Gomes alleged that both Avco and Local 1010 discriminated against him because of his Portuguese national origin. Gomes also alleged that both Avco and Local 1010 enforced facially neutral job requirements that disproportionately excluded Portuguese workers from skilled jobs at Avco. The district court granted summary judgment to Avco and Local 1010 and dismissed the complaint in all respects. This appeal followed.

*Background*

Plaintiff Gomes works as a machinist at defendant Avco's factory. Gomes has been an employee of Avco since 1968 and has been represented by Local 1010 under a series of collective bargaining agreements throughout his employment at Avco. These collective bargaining agreements divide machinist jobs into higher paid "skilled" jobs and lower paid "production" jobs. The parties agree that through most of his career at Avco, Gomes has held production level jobs. In 1978 and 1979, Gomes worked as a jig bore operator, which may be either a skilled or production job, and there is some dispute as to whether or not Gomes performed skilled work in this position. Prior to beginning work at Avco in 1968, Gomes worked for approximately seven years as a skilled machinist in the tool and die industry.

In January of 1985, Avco placed advertisements for positions in the skilled trade positions of jig bore operator and boring mill operator in a local newspaper. On February 11, 1985, Gomes applied for the two positions. On April 14, 1985, Avco advised Gomes in writing that they did not consider him qualified for the positions.

Under the collective bargaining agreement between Avco and Local 1010, in order to qualify for promotion to the skilled trades, an employee needed to demonstrate eight years of practical experience or complete an apprenticeship course. Avco credited Gomes with the seven years of work experience prior to 1968, but determined that Gomes' 1978–79 employment as a jig bore operator did not count towards the eight year requirement. Accordingly, Avco concluded that Gomes lacked the necessary experience and denied Gomes the promotion.

Upon receiving this rejection, Gomes sought relief through Local 1010's grievance procedures. On November 4, 1985, Local 1010 informed Gomes that the union agreed with Avco's determination that Gomes lacked the requisite experience for promotion into the skilled trades. Accordingly, Local 1010 advised Gomes that the union would not pursue Gomes' grievance.

In October of 1986, Gomes discovered that a former colleague of his, Philip Marcuccio had been promoted to one of the positions that Gomes had sought in 1985. Gomes alleges that Marcuccio suggested to him that Gomes lost the promotion to Marcuccio because Marcuccio was an Italian-American.

Spurred by this statement, Gomes met with Avco on January 5, 1987 to discuss the denial of promotion. Avco reiterated its position that Gomes lacked the necessary experience. Gomes then requested that Avco accept a "preference card" from Gomes. Under the collective bargaining agreement, the acceptance of such a card

would place Gomes on a list for promotion, should a vacancy become available in the next year. Avco, adhering to its position that Gomes did not meet the qualifications for the position, refused to accept the preference card. On January 26, 1987, Gomes again requested that the Union file a grievance on his behalf. Local 1010 again refused to do so.

On April 2, 1987, Gomes filed two complaints, pro se, with the Connecticut Commission on Human Rights and Opportunities (CCHRO) alleging that Avco and Local 1010 had discriminated against him on the basis of his Portuguese origin in denying him the 1985 promotion and in refusing to protest that denial. Gomes simultaneously filed the same complaints with the Equal Employment Opportunity Commission (EEOC). After investigation, the CCHRO dismissed both complaints for lack of evidence. The EEOC reviewed the CCHRO investigation and reached a similar conclusion.

On March 29, 1989, Gomes filed suit, pro se, in federal court alleging that Avco and Local 1010 had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Title VII). The complaint focused on the April 4, 1985 denial of promotion and Local 1010's failure to grieve that denial. In April of 1989, Gomes made two technical amendments to this complaint.

Defendants filed answers to the complaint, discovery commenced, and in August of 1989, the district court granted Gomes' motion for the appointment of counsel. The district court then extended the discovery period to allow Gomes time to obtain counsel. On November 30, 1989, Gomes retained counsel.

On June 5, 1990, the district court granted Gomes permission to file a third amended complaint. Gomes added a 42 U.S.C. § 1981 claim against Local 1010 and a disparate impact claim against both parties. Gomes also attempted to add a § 1981 claim against Avco, but the district court concluded that such a claim would be time barred, and denied Gomes leave to so amend the complaint.

On September 10, 1990, Gomes filed a motion to amend the third amended complaint to add allegations relating to Avco's refusal to accept Gomes' preference cards in 1987 and Local 1010's refusal to file a grievance objecting to that refusal. The district court denied leave to amend on the ground that further delays in the proceedings would prejudice Avco and Local 1010.

On October 30, 1991, on Avco and Local 1010's motion, the district court granted summary judgment to the defendants. The court concluded that Gomes' disparate treatment and § 1981 claims were time barred. The court also ruled that Gomes had not exhausted his administrative remedies on his disparate impact claim. Gomes appeals from both this grant of summary judgment and from the district court's denial of leave to amend Gomes' third amended complaint.

*Discussion*

Gomes raises a series of objections on this appeal. First, Gomes asserts that the district court erred in dismissing his disparate treatment claims as time barred since the discrimination in each instance was part of a continuing violation. In the alternative, Gomes suggests that misconduct by Avco and Local 1010 equitably tolled the statute of limitations. Gomes also argues that the EEOC investigation of his charges should have encompassed his disparate impact allegations. Accordingly, Gomes asserts that he exhausted his administrative remedies before filing suit. Finally, Gomes argues that the district court abused its discretion in denying him leave to file a fourth amended complaint. We will address these arguments in turn.

1. Disparate Treatment

Gomes' third amended complaint alleges that Avco denied him a promotion in 1985 and that Local 1010 refused to pursue a grievance because of Gomes' Portuguese heritage. Gomes contends that these actions violated Title VII, which forbids unions and employers from discriminating on the ground of national origin.

A Title VII plaintiff must file a charge with the EEOC within 180 days of the

violation or, where the plaintiff first files with a state or local equal employment agency, within 300 days of the violation. 42 U.S.C. § 2000e–5(e). Gomes filed his complaints in April of 1987, more than 300 days after the 1985 incidents.

The district court granted summary judgment to the defendants on the ground that both claims were time barred. On appeal, Gomes suggests that the district court erred on two grounds. First, he contends that the discriminatory incidents identified above were part of continuing violations by Avco and Local 1010. Second, he asserts that Avco's and Local 1010's concealment of the discrimination equitably tolled the statute of limitations.

■ We agree with Gomes that the normal statute of limitations rules under Title VII do not apply where "employees are hired or refused employment [or promotion] pursuant to a continuous practice and policy of discrimination." *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). Instead, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.; see also Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982). Here, however, Gomes has failed to put forth any evidence of a continuous policy or practice of discrimination.

■ Gomes asserts that the eight year rule provides a common link between the 1985 and 1987 promotion refusals, and thus creates an inference that Avco and Local 1010 employed a continuous policy of discrimination. The problem with this argument is that it presumes that the eight year rule itself has a discriminatory motive. But, on its face, the rule is proper. While Gomes has put forth evidence that the rule has a discriminatory impact on Portuguese, he has offered no evidence that the rule had a discriminatory motive. Without such evidence, the enforcement of a facially neutral rule cannot amount to a continuing

practice of intentional discrimination. *See O'Malley v. GTE Service Corp.*, 758 F.2d 818, 821–22 (2d Cir.1985). Accordingly, we conclude that the district court properly rejected Gomes' continuing violation claim.

■ Gomes also asserts that the statute of limitations should be equitably tolled since Local 1010 and Avco prevented him from learning that he had been discriminated against. However, Gomes has failed to present any evidence that either defendant actively prevented Gomes from discovering that a non-Portuguese person had received the promotion that Gomes sought in 1985. Accordingly, we reject Gomes' equitable tolling argument.

Finally, Gomes argues that even if the statute of limitations bars his challenge to the 1985 incidents, Avco's 1987 refusal to accept preference cards and the union's refusal to file a challenge to this constitute independent acts of discrimination within 300 days of the filing of the EEOC complaint. However, Gomes' third amended complaint does not mention the 1987 conduct. Thus, Gomes cannot base his disparate treatment claims on these acts. We conclude that the district court properly granted the defendants summary judgment on the disparate treatment claims.

2. Section 1981

Gomes' third amended complaint, filed on June 14, 1990, raised for the first time a § 1981 claim against Local 1010. Section 1981 prohibits discrimination in the making or enforcement of contracts. Gomes contends that by refusing to process his grievance, Local 1010 prevented him from entering into a new contract with Avco. The district court granted summary judgment to Local 1010 on the ground that Connecticut's three year statute of limitations barred the claim.

Gomes contends on appeal that his § 1981 charge challenged both the 1985 and 1987 refusals to file grievances. Since Gomes filed his initial complaint in federal court in March of 1989, Gomes contends that his § 1981 claim is timely insofar as it pertains to the 1987 refusal.

■ This argument presumes that Gomes' § 1981 charge, added to the complaint in June of 1990, relates back to the date of filing of the original complaint, in March of 1989. However, under the rules in effect in 1990, later amendments to a complaint related back to the initial filing only where "the claim ... asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth ... in the original pleading." Fed.Rule Civ.P. 15(c). Gomes contends that the 1987 refusal involved a separate act of discrimination. To the extent that the 1987 refusal was a separate act, then Gomes' claim does not relate back to the date of the initial filing since that filing related only to the 1985 events. Therefore, the appropriate date to measure the statute of limitations from is June of 1990, more than three years after the January 1987 refusal to file a grievance. We need not decide whether the 1991 amendments to Rule 15, which add two additional grounds for relation back, apply to this case, since neither new ground is satisfied here.

Gomes also contends that the union's 1985 and 1987 refusals constituted a continuing practice of discrimination. For the reasons stated in the discussion of Gomes' disparate treatment claims above, we disagree. Accordingly, we affirm the district court's grant of summary judgment to Local 1010 on Gomes' § 1981 claim.

### 3. Disparate Impact

In addition to contending that Avco and Local 1010 intentionally discriminated against him, Gomes also argues that the defendants employed a neutral practice, the eight year rule, that disproportionately excluded Portuguese from skilled machinists positions at Avco. The district court dismissed this claim on the ground that Gomes' complaint filed with the EEOC failed to give fair notice of the charge.

■ In Title VII cases, the district courts have jurisdiction over only those claims "reasonably related to the allegations in [plaintiff's EEOC] complaint." *Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir.1980) (per curiam). In determining whether a particular claim is reasonably related to the plaintiff's EEOC complaint, "[w]e look not merely to the four corners of the often inarticulately framed charge, but take into account the 'scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'" *Silver v. Mohasco Corp.,* 602 F.2d 1083, 1090 (2d Cir. 1979), *rev'd on other grounds,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). After careful examination of Gomes' EEOC complaint, we conclude that the EEOC would reasonably have been expected to investigate whether the eight year rule excluded Portuguese from higher paying jobs with Avco.

Gomes' EEOC complaints contained the following allegations: (1) that Gomes is a Portuguese male; (2) that Gomes applied for the jig bore and boring mill positions; (3) that the eight year experience rule governs promotions to those positions; (4) that Gomes believed he satisfied the eight year rule; (5) that a less qualified employee was promoted to the position instead of Gomes; (6) that the union refused to pursue a grievance because it did not think Gomes satisfied the eight year rule; and (7) that Gomes was the only Portuguese employee in his job classification.

To be sure, this complaint most naturally supports a claim of intentional discrimination. Gomes alleged that he was qualified for the job, but instead Avco hired someone less qualified. Nonetheless, once the EEOC investigated the case and found that Gomes did not satisfy the eight year rule, it would have been perfectly natural for the EEOC to question the necessity of the eight year rule itself. Gomes' allegation that people with less experience than he (and thus less than eight years) were promoted ahead of him should have raised suspicion that there was no business justification for the rule. Given that Gomes had also alleged that he was the only Portuguese in his job category, the EEOC could then have reasonably inquired as to whether this possibly unnecessary rule had a discriminatory impact on employees of Portuguese decent. Accordingly, we conclude

that an investigation of Gomes' disparate impact claim would reasonably have flowed from an investigation of his disparate treatment claim.

The district court, in reaching the contrary conclusion, relied on *Brown v. Puget Sound Elec. App. & Train. Trust,* 732 F.2d 726 (9th Cir.1984), *cert. denied,* 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985). *Brown,* however, is readily distinguishable. In *Brown,* the plaintiff, following the defendant union's rejection of her application to enter an apprenticeship program, complained to the EEOC that the union's admissions practice (giving a preference to veterans) had a disparate impact on women. In response to this complaint, the union eliminated the preference. Plaintiff then reapplied to the union, and the union again denied plaintiff admission to the apprenticeship program. Without filing a second EEOC complaint, plaintiff initiated a Title VII action in federal court, challenging both the first denial on disparate impact grounds and the subsequent denial on a disparate treatment theory. The Ninth Circuit affirmed the district court's determination that the disparate treatment charge was not fairly encompassed within plaintiff's initial EEOC complaint. The court reasoned that an investigation of plaintiff's initial disparate impact charge would not have encompassed her subsequent intentional discrimination charge, which related to an incident one year after her original application was rejected, and after the union had eliminated its allegedly discriminatory rule.

Thus, *Brown* turned not on plaintiff's failure to describe both theories of relief in her EEOC complaint, but rather on the factual differences in the two complained of acts of discrimination. Gomes' third amended complaint, in contrast, asserted two different theories of relief to remedy the particular incidents of discrimination identified in Gomes' EEOC complaint. *See Wright v. National Archives & Records Service,* 609 F.2d 702, 711 (4th Cir.1979) (en banc) (Disparate impact and disparate treatment theories are "rightly treated simply as alternative theories upon which a right to relief under Title VII may be established in a given case.").

Defendants have not cited a single case where plaintiff's failure, in an EEOC complaint, to properly identify a theory of discrimination barred a subsequent suit in federal court relating to the precise incident challenged in the EEOC complaint. Accordingly, we conclude that the district court erred in determining that Gomes had failed to exhaust his administrative remedies on the disparate impact claim.

Defendants argue, however, that even if Gomes' disparate impact claim was properly before the district court, we should affirm the dismissal anyway, since the disparate impact claim is time barred. However, when a Title VII defendant employs a policy with a disparate impact on plaintiffs, "if the charge has been filed no later than 300 days after the *last* act by the defendant pursuant to its policy, the plaintiff may recover for earlier acts of discrimination as well." *Ass'n Against Discrimination,* 647 F.2d at 274. Gomes last suffered the impact of the eight year rule when the union denied his second grievance request in January of 1987, well within 300 days of the filing of his EEOC complaint in April of 1987. Accordingly, we conclude that Gomes' disparate impact claim is not time barred.

Defendants also argue that Gomes has failed to make out a prima facie case of disparate impact. While we agree that Gomes faces an uphill road, the district court has yet to pass on the merits of the claim. Accordingly, we leave to the district court the task of assessing whether or not Gomes has made out a prima facie case.

4. Leave to Amend the Complaint

Finally, Gomes challenges the district court's denial of leave to file a fourth amended complaint. The grant of leave to amend a complaint is left to the sound discretion of the district court, and we review only for an abuse of that discretion. *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988). While we ordinarily require the district courts to give substantial leeway to pro se litigants, *Bobal v. Rensselaer Poly-*

*technic Inst.,* 916 F.2d 759, 762 (2d Cir. 1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1404, 113 L.Ed.2d 459 (1991); *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988), here Gomes has already amended his complaint three times, once with the benefit of counsel. The district court was well within its discretion in denying leave to amend a fourth time. Of course, the district court is free to reconsider the question in light of our remand for further proceedings on the disparate impact claim.

### Conclusion

We affirm the district court's grant of summary judgment on plaintiff's disparate treatment and § 1981 claims. We reverse the district court's grant of summary judgment on plaintiff's disparate impact claim, and remand for further proceedings on that claim. We affirm the district court's refusal to grant Gomes leave to file a fourth amended complaint.

Affirmed in part, reversed and remanded in part.